**Diane STALNAKER, Plaintiff,**

v.

**KMART CORPORATION, Defendant.**

**Civil Action No. 95–2444–GTV.**

United States District Court, D. Kansas.

Dec. 17, 1996.

Albert F. Kuhl, Law Offices of Albert F. Kuhl, Lenexa, KS, for Plaintiff.

John J. Moellering, Gary M. Smith, Lewis, Rice & Fingersh, St. Louis, MO, Leland H. Corley, Lewis, Rice & Fingersh, Kansas City, MO, for Defendant.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

In this action, plaintiff claims to have been sexually harassed and retaliated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The case is before the court on defendant's motion for summary judgment (Doc. 51). For the reasons set forth below, the motion is granted.

### I. Factual Background

The following facts are either uncontroverted or are based on evidence viewed in the most favorable light to the non-moving party.

On May 5, 1994, defendant K–Mart Corporation hired plaintiff Diane Stalnaker as a "fashion associate" in the bed and bath area of its fashion department. Plaintiff's responsibilities encompassed straightening and stocking shelves and helping customers as needed. Plaintiff's sole supervisors were Jeff Warnock, the fashion department manager, and Keith McWatters, the store's general manager.

Within four days of commencing employment at K–Mart, plaintiff began to experience problems with Donald Graves, the manager of defendant's receiving department. Although a member of management, Graves exercised no supervisory authority over plaintiff and had no power to alter the terms or conditions of her employment. In fact, at no time during her tenure at K–Mart was plaintiff aware that Graves was a manager at the store.

Most of plaintiff's adverse encounters with Graves occurred while she was delivering merchandise and empty boxes to the store's receiving area. On approximately ten occasions over the course of several weeks, Graves approached plaintiff, grabbed her hand or rubbed up against her arm and shoulder, and told her jokes containing sexual innuendo. Each time, plaintiff immediately pulled away, finished her business in the area, and returned to the fashion department.

On another occasion, Graves pushed a shopping cart into the space between plaintiff's cash register and her work area, leaving her virtually no room in which to move. Graves then muttered "dirty comments" under his breath, grabbed plaintiff's hand, rubbed against her arm and unsuccessfully attempted to place his arms around her waist. After a few moments, he left the area.

The final "incident" between plaintiff and Graves occurred in June 1994 in the store's receiving area. While plaintiff carried a handful of boxes, Graves approached her and moved his hands down the sides of her torso, partially brushing her breasts in the process. Plaintiff responded by quickly shoving Graves away and departing the receiving area.

There were no witnesses to any of the aforementioned events. The K–Mart employee handbook contains a written policy against sexual harassment and directs employees to bring any complaints of harassment to a manager at either the store, district or regional level. During her orientation, plaintiff read the manual and specifically signed a checklist indicating that she understood K–Mart's policy on the matter. Plaintiff, however, did not report any of Graves' conduct to management until early July 1994.

During the first week of July 1994, plaintiff told her supervisor, Jeff Warnock, that Graves had been harassing her at work. Plaintiff's complaint represented the only sexual harassment allegation ever made against Graves in his ten years of employment at K–Mart. Plaintiff expressed to Warnock that Graves had touched her hands and arm when speaking to her, and had made statements to her containing sexual innuendo. Warnock responded by assuring plaintiff that he would promptly notify general manager Keith McWatters of the alleged incidents. That same afternoon, Warnock reported plaintiff's allegations to McWatters. McWatters then instructed Warnock to obtain from plaintiff a written statement outlining her allegations against Graves. On July 8, 1994, plaintiff delivered a copy of the requested statement to McWatters.

The same day that plaintiff submitted her written complaint to McWatters, McWatters questioned Graves regarding plaintiff's allegations. Graves denied having engaged in any offensive conduct. McWatters responded by reaffirming the company's zero tolerance for sexual harassment and requesting from Graves a written explanation of his contacts with plaintiff. At the conclusion of the meeting, McWatters also required Graves to sign a "Notice of Corrective Action" assuring that no harassment would occur in the future.

Within hours after meeting with Graves, McWatters also spoke with plaintiff and expressed to her that he felt the situation had been fully resolved. He told plaintiff that while he believed that all alleged harassment had ceased, she should contact him immediately if any future problems arose. Following this discussion, plaintiff experienced no sexual harassment from Graves. In fact, plaintiff only saw Graves one time after he met with McWatters on July 8. On that occasion, Graves kept his head down and did not look at plaintiff.

Although plaintiff suffered no sexual harassment after reporting Graves' misconduct to management, she felt that her supervisors and colleagues began to treat her coldly. McWatters, for example, made plaintiff feel quite uncomfortable as he monitored her work area. On one occasion, McWatters and a security guard joked and laughed around plaintiff while she attempted to put up store displays. On another occasion, McWatters and the store security officer pointed at plaintiff for several hours. Finally, at a store meeting attended by a roomful of employees,

one of plaintiff's co-workers suggested that Graves, who was celebrating his fortieth birthday, deserved forty smacks on his buttocks. This comment, although directed to a roomful of employees, caused plaintiff emotional distress.

On July 15, 1994, plaintiff quit her job at K–Mart.

## II. Summary Judgment Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## III. Discussion

Plaintiff has asserted claims for sexual harassment and retaliation. The court will consider each claim in turn.

### A. Sexual Harassment

There are two distinct types of sexual harassment recognized under Title VII: quid pro quo discrimination and hostile work environment. *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (1993) (citing *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) ). Plaintiff predicates her claims exclusively on the latter category.

To prevail under a hostile work environment theory, plaintiff must demonstrate that sexual conduct had "the purpose or effect of unreasonably interfering with" her work performance or created "an intimidating, hostile, or offensive working environment." *Martin,* 3 F.3d at 1418. Sexual harassment is actionable only if the "workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 20, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).

Plaintiff's claims against K–Mart are predicated on the conduct of Donald Graves. For plaintiff to prevail, therefore, she must prove not only that Graves' misconduct exposed her to a hostile work environment, but that K–Mart is responsible for Graves' actions.

In assessing defendant's liability, the court need not determine whether Graves' conduct constituted "sexual harassment." The Supreme Court, in *Vinson,* 477 U.S. at 72, 106 S.Ct. at 2407–08, rejected the view that employers are automatically liable for the sexual harassment committed by their supervisors. The Court stated that common law agency principles should guide the determination of whether an employer should assume liability for harassment at the workplace. In response to this directive, the Tenth Circuit has articulated three alternative bases for holding an employer liable for an agent's hostile work environment sexual harassment. *Hirschfeld v. New Mexico Corrections Dep't,* 916 F.2d 572, 576–79 (10th

Cir.1990). The court will evaluate separately each potential basis for liability.

### 1. Scope of Employment Harassment

■ Predicated upon the Restatement (Second) of Agency § 219(1) (1958), the first situation in which liability may be imposed upon an employer exists when the employer's agent commits misconduct while acting within the scope of his employment. *Hirschfeld,* 916 F.2d at 576. This theory, however, is largely inapplicable to sexual harassment cases because "sexual harassment is simply is not within the job description of any supervisor or any other worker in any reputable business." *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1417–18 (10th Cir.1987) (citation and internal alterations omitted).

■ Not only was Graves' conduct toward plaintiff not part of his job description, it was expressly prohibited by defendant's sexual harassment policy, as outlined in its employee handbook. Accordingly, the court finds that Graves' actions were not within the scope of his employment.

### 2. Employer Negligence or Recklessness

■ Another basis for subjecting an employer to liability focuses on the employer's negligence or recklessness in failing to respond to sexual harassment permeating the worksite. *Hirschfeld,* 916 F.2d at 577. The Tenth Circuit defines employer negligence in this context as "failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." *Id.* (citing *EEOC v. Hacienda Hotel,* 881 F.2d 1504, 1516 (9th Cir.1989)).

The record is devoid of any evidence suggesting that defendant, prior to plaintiff voicing her allegations in early July 1994, knew or should have known of any misconduct by Graves. Indeed, defendant had not received a single complaint of sexual harassment regarding Graves in his ten years of employment at K–Mart.[1] Moreover, every incident of harassment alleged by plaintiff occurred without a single witness.

The very day that plaintiff complained of Graves' conduct to her supervisor, defendant initiated an investigation into the accusations. Although plaintiff objects to the scope of the inquiry and the severity of the sanctions, she concedes that she endured no further harassment from Graves after reporting her allegations to senior management. The immediate cessation of the harassment underscores that defendant's corrective action remedied the hostile work environment.

The case law on employer liability under Title VII indicates that prompt remedial action of the sort taken by defendant in the case at bar generally absolves the employer of responsibility for its agent's sexual harassment. *See, e.g., Creamer v. Laidlaw Transit, Inc.,* 86 F.3d 167 (10th Cir.) (employer not liable for employee's sexual harassment where employer ordered employee to stop harassing plaintiff shortly after harassment began), *cert. denied,* ── U.S. ──, 117 S.Ct. 437, 136 L.Ed.2d 335 (1996); *Hirschfeld,* 916 F.2d 572 (employer's immediate corrective action after being informed of plaintiff's sexual harassment allegations negated liability).

Plaintiff urges the court to adopt a broader test for employer liability encompassing situations in which "actual or apparent agency authority existed on the part of the managerial employee who engaged in the wrongdoing." Plaintiff cites nothing in support of this contention and the court's own research indicates that plaintiff's theory has been implicitly rejected by the Tenth Circuit.

■ In *Hirschfeld,* the Tenth Circuit refused to subject the New Mexico Corrections Department to liability for a supervisory correctional officer's sexual harassment of a

---

1. In an attempt to show that Graves' sexual harassing conduct was widespread, plaintiff offers the affidavit of Natalie Rosas, a former K–Mart employee. Ms. Rosas states that Graves put his arm around her on several occasions, which was, "at times," unwelcome to her. Ms. Rosas never indicates, however, that she expressed any objections regarding the conduct to either K–Mart management or Graves himself. The remainder of the affidavit is filled with vague allegations, many of which are based on pure hearsay. The court does not find that the affidavit creates a genuine issue of fact as to defendant's alleged knowledge of Graves' workplace misconduct.

prison typist. *Hirschfeld*, 916 F.2d at 578. Recognizing that the offender's job title is not the dispositive consideration, the court noted that the prison authorities' remedial action "was as effective as that recognized by other circuits which have found no liability" under such circumstances. *Id.* *Hirschfeld* also cited favorably to *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311 (11th Cir. 1989), in which the Eleventh Circuit held that harassment by a corporate vice-president did not automatically expose the employer to liability. "Strict liability is illogical in a pure hostile environment setting.... Corporate liability, therefore, exists only ... where the corporate defendant knew or should have known of the harassment *and failed to take prompt remedial action against the supervisor.*" *Id.* at 1316 (emphasis added).

▆ Unless a supervisor relies on his supervisory authority to facilitate his harassment, the situation is almost indistinguishable from cases in which a plaintiff's co-workers carry out the harassment. The employer, therefore, assumes liability only if it "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Karibian v. Columbia Univ.*, 14 F.3d 773, 780 (2d Cir.1994). In sum, to accept plaintiff's argument is to repudiate the Supreme Court's statement in *Vinson* that employers are not automatically liable for the sexual harassment committed by their supervisors. This court will embrace no such theory.

### 3. Supervisory Authority Facilitating Harassment

▆ The third basis for employer liability is where an authority or agency relationship aids the harasser. Under this theory, defendant may be liable for Graves' actions if Graves "purported to act or speak on behalf of [defendant] and there was reliance upon apparent authority, or [Graves] was aided in accomplishing the [harassment] by the existence of the agency relation." *Hirschfeld*, 916 F.2d at 579.

▆ The evidence is undisputed that Graves exercised no supervisory authority over plaintiff and had no power to alter the terms or conditions of plaintiff's employment.

At no time during her tenure at K–Mart did plaintiff know that Graves was a member of the store's management. There is nothing in the record indicating that Graves used his status as receiving department manager to facilitate his sexual harassment of plaintiff. Accordingly, the court holds that defendant is not liable for Graves' hostile work environment sexual harassment.

### B. Retaliation

▆ Plaintiff further argues that defendant retaliated against her after she filed her sexual harassment complaint with store management. To establish a prima facie case of retaliation under Title VII, plaintiff must show: (1) that she engaged in protected opposition to discrimination; (2) that she suffered adverse action from her employer; and (3) that there was a causal connection between her protected activity and her employer's adverse action. *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir.1993). Defendant insists that plaintiff's claim must fail because she is unable to demonstrate that defendant took any adverse action against her. Plaintiff concedes that she was neither demoted nor discharged but maintains that defendant, nevertheless, retaliated against her by making her post-complaint employment unbearable.

▆ Although not specifically plead as such, plaintiff's allegations appear to be predicated on a constructive discharge claim. To establish constructive discharge, plaintiff must demonstrate that defendant, by its illegal discriminatory acts, made working conditions so difficult that a reasonable person in her position would feel compelled to resign. *Daemi v. Church's Fried Chicken*, 931 F.2d 1379, 1386 (10th Cir.1991). This standard is applied objectively; the plaintiff's subjective views are irrelevant to the inquiry. *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 172 (10th Cir.1982).

▆ Plaintiff's examples of her "intolerable" working conditions consist of: (1) Keith McWatters' surveillance of her work area; (2) McWatters and a store security officer laughing and pointing in plaintiff's direction; and (3) a co-employee suggesting at a store

meeting that Donald Graves be given "forty smacks" in honor of his birthday. However genuine plaintiff's distress, these incidents cannot be reasonably described as creating an intolerable working environment.

Plaintiff first contends that, after she submitted her harassment complaints, McWatters frequently appeared in her work area. In her deposition, however, plaintiff conceded that McWatters monitors all employees as part of his normal job duties as store manager. Her testimony further suggests that McWatters' post-complaint surveillance was essentially no different than his pre-complaint surveillance.

On only two occasions was McWatters' monitoring of plaintiff distinguishable from his monitoring of other K–Mart employees. In one incident, plaintiff contends that McWatters "seemed to be joking about [her] with a security officer." Plaintiff testified in her deposition, however, that she did not hear any of the conversation between McWatters and the security officer and did not even know if the conversation involved her. On another occasion, plaintiff alleges that McWatters and the store security officer stood a half-aisle away and pointed at her for several hours. Even if true, this one isolated situation does not constitute a sufficiently "intolerable" working condition to trigger a constructive discharge claim.

■ Plaintiff next asserts that at a store meeting attended by all employees, one of her colleagues suggested that everyone "go in the back and give [Donald Graves] forty smacks" in honor of his birthday. Plaintiff maintains that this comment contributed to her unbearable working conditions. This argument is without merit. The comment was directed not at plaintiff but at a roomful of employees. Moreover, the incident involved no discriminatory conduct by defendant. The intolerable conditions necessary for a constructive discharge claim must be the result of the *employer's* discriminatory acts, not plaintiff's general discontent with the insensitivity of her fellow employees. *See Hirschfeld*, 916 F.2d at 580 (holding that rumors regarding plaintiff, initiated and circulated exclusively by her fellow employees after she communicated a sexual harassment complaint to her employer, are insufficient to hold employer liable for constructive discharge).

■ The court, having found that plaintiff was not constructively discharged, concludes that summary judgment on plaintiff's retaliation claim is appropriate.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 51) is granted.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**