**Charles R. MORALES, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, POSTMASTER GENERAL, Defendant.**

No. Civ.A. 97–2400–KHV.

United States District Court, D. Kansas.

May 4, 1998.

Charles R. Morales, Kansas City, KS, pro se.

Christina L. Medeiros, Office of U.S., Kansas City, KS, for U.S. Postal Service, Postmaster General.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter is before the Court on *Defendant's Motion For Summary Judgment* (Doc. # 27) filed March 13, 1998. Plaintiff pro se, a former United States postal employee, claims that defendant unlawfully retaliated against him in violation of Title VII

for filing a prior race discrimination lawsuit. He also claims that defendant failed to accommodate his disability in violation of the Rehabilitation Act of 1973, as amended by the Civil Rights Act of 1991, 29 U.S.C. § 791 *et seq.* Specifically, plaintiff claims that defendant retaliated against him on August 16, 1994, when it terminated his employment with the United States Postal Service because he had pursued a prior Title VII lawsuit. Plaintiff also claims that defendant failed to accommodate him on March 16, 1994, when it created a new tug job for which he was qualified and awarded it to another bidder. Defendant argues that plaintiff cannot establish a prima facie case of discrimination or retaliation and that if plaintiff can establish a prima facie case, it is entitled to summary judgment because it acted for legitimate nondiscriminatory reasons which plaintiff cannot establish are pretextual. For the following reasons, the Court finds that defendant's motion should be overruled.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); accord *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l. Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson* at 251–52.

### Factual Background

The following material facts are undisputed under Fed.R.Civ.P. 56, D.Kan.Rule 56.1, and the Court's scheduling order:

### 1. Retaliation

Plaintiff is a formal federal employee of the U.S. Postal Service who worked at the Bulk Mail Center in Kansas City, Kansas. On September 11, 1992, plaintiff filed a lawsuit against the postal service, alleging illegal employment discrimination on the basis of race (Case No. 92–2329). At trial on July 8, 1994, this Court granted judgment as a matter of law in favor of the postal service at the completion of plaintiff's case in chief.

On July 12, 1994, defendant issued plaintiff a Notice of Proposed Removal for repeated failure to follow management's instruction to undergo a functional capacities evaluation ("FCE") to better assess appropriate work restrictions due to plaintiff's degenerative disc condition in his back. The Notice cited

six instances, over the course of a year, on which plaintiff had refused to participate in scheduled FCE appointments. Defendant discharged plaintiff effective August 16, 1994.

Plaintiff had attended an FCE on May 17, 1994, but he had refused to fully participate. According to plaintiff, he would participate in a FCE, but he requested not to perform the portions of the evaluation which exceeded his medical limitations. Plaintiff's physician, Dr. Barry Galbraith, advised plaintiff that participating in an FCE could cause further debilitating injury to his lower back.

**2. Failure to Accommodate**

On March 9, 1994, plaintiff submitted an unsigned bid card for certain positions at the Bulk Mail Center, including a tug job. Although plaintiff was the senior bidder for this position, defendant did not consider plaintiff for the job. An employee must sign a bid card in order to be considered for an open position. One reason defendant did not consider plaintiff for the tug job was that plaintiff had not signed his bid card. Defendant also asserts that it did not consider plaintiff for the tug job because it did not know the extent of plaintiff's disability and therefore could not know if plaintiff was qualified for the job. Defendant knew, however, that plaintiff's doctor of record had permanently restricted plaintiff from lifting more than 20 pounds. *See Declaration of Danny Burch*, at ¶ 18 Exhibit to *Defendant's Memorandum In Support Of His Motion For Summary Judgment* (Doc. # 28) filed March 13, 1998.

Defendant submits two descriptions for the tug job. The first indicates that applicants must have sufficient skills, abilities and knowledge to (1) use and maintain equipment; (2) work without immediate supervision; (3) safely perform duties common to the position; (4) interpret instructions; (5) understand and comply with written and verbal instructions; (5) handle weights and loads, beyond normal functions of a position; and (6) work with others. This description also states that applicants "must be proficient at operating a jitney, forklift or pallet truck in confined areas, both indoors and outside, and at estimating weights and negotiable space limitations," and have a valid U.S. Government Motor Vehicle Operator's I.D. to operate powered industrial equipment. *See Tug Job Description*, Exhibit to *Defendant's Memorandum In Support Of His Motion For Summary Judgment* (Doc. # 28) filed March 13, 1998. The second description states that the basic function of the tug position is to operate a jitney, fork-lift or pallet truck to move mail and perform other mail handler functions as required. It lists the duties and responsibilities for the position as (1) operating a jitney, fork-lift or pallet truck as a qualified licensed driver in transporting mail within a postal facility; (2) moving the empty equipment used to transport mail to storage or staging areas; (3) performing routine safety inspections and reporting any deficiencies; (4) observing safety practices and requirements; and (5) performing other mail handler duties when not occupied as a licenced driver as described above. *Id.*

### *Analysis*

**1. Retaliation Claim**

■ Plaintiff offers no direct evidence that defendant retaliated against him on the basis of race. Instead, plaintiff relies on circumstantial evidence to prove defendant's discriminatory intent. To insure an efficient presentation of circumstantial evidence, the Tenth Circuit adopts the burden shifting scheme originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Under the *McDonnell Douglas* framework, plaintiff first must establish a prima facie case of retaliation. If plaintiff succeeds, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995). If defendant meets that burden, all presumptions of discrimination drop from the case. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The burden then shifts back to plaintiff to prove by a preponderance of the evidence that defendant's proffered reasons for the challenged actions are merely a pretext for discrimination—*i.e.*, that it is "unworthy of belief." *Randle*, 69 F.3d at 451.

To establish a prima facie case of retaliation under Title VII, plaintiff must show (1) that he engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) that he was disadvantaged by an action of his employer subsequent to or contemporaneously with such opposition or participation; and (3) that a causal connection exists between the protected activity and the adverse employment action. *McKinley Craft v. Yellow Freight Sys., Inc.*, No. 97–1029, 1998 WL 72783, at *4 (10th Cir. Feb. 23, 1998) (unpublished decision); *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir.1993); *Stalnaker v. KMart Corp.*, 950 F.Supp. 1091, 1097 (D.Kan.1996). The requisite causal connection "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kansas, Inc.*, 683 F.2d 339, 343 (10th Cir.1982).

It is undisputed that plaintiff can establish the first two elements of his prima facie case: he engaged in protected activity when he pursued his prior race discrimination lawsuit and defendant subsequently discharged him. Defendant argues, however, that plaintiff cannot establish a causal connection between the two because nearly two years passed between the time plaintiff filed the lawsuit (September 11, 1992) and the date of his discharge (August 16, 1994). The Court does not agree. To view plaintiff's protected activity as limited to the date he filed the lawsuit mischaracterizes the applicable time period. Plaintiff pursued his remedies to trial, ending July 8, 1994. Four days later, defendant issued plaintiff a Notice of Proposed Removal, and it terminated his employment effective August 16, 1994. Viewed in this context, the Court finds that plaintiff establishes sufficient temporal proximity to support a prima facie case of retaliation. *Accord Marx v. Schnuck Markets Inc.*, 76 F.3d 324, 329 (10th Cir.1996).

Alternatively, defendant argues that it fired plaintiff for a legitimate nondiscriminatory reason which plaintiff cannot demonstrate is pretextual—his repeated failure to follow management's instruction to complete a functional capacity evaluation. Without this evaluation, defendant argues that it could not determine the extent of plaintiffs physical capabilities.

The Court will assume for purposes of this motion that defendant's asserted reason for its action—a repeated failure to follow instructions from management—meets defendant's burden of producing a legitimate nondiscriminatory reason for its employment decision. Accordingly the burden shifts back to plaintiff to prove by a preponderance of the evidence that this proffered reason is merely a pretext for discrimination—*i.e.*, that it is "unworthy of belief" *Randle*, 69 F.3d at 451. Plaintiff may meet this burden by demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action" such that a reasonable factfinder could find the reasons unworthy of credence and infer that the employer did not act for those asserted legitimate, nondiscriminatory reasons. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997). Mere conjecture that the employer's explanation is a pretext for intentional discrimination, however, is not enough to overcome a motion for summary judgment. *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988).

The Court finds that plaintiff has done so here. First, plaintiff did report for a FCE appointment on May 17, 1994, but plaintiff's doctor had advised him that participating in a functional capacity exam could cause further debilitating injury to his lower back. Plaintiff claims that he only refused to perform the portions of the examination which exceeded his established medical limitations. Moreover, the four-day time period between plaintiff's protected activity and defendant's adverse action also raises a strong presumption of causal connection which plaintiff may also use to demonstrate pretext. *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1397 (10th Cir.1997). Viewing the evidence as we must, the Court finds that plaintiff has demonstrated sufficient weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in defendant's proffered legitimate reason for its action such that a reasonable jury could find it unworthy of credence and infer that defendant did not act for this asserted legitimate,

nondiscriminatory reason. *See Morgan v. Hilti, Inc.,* 108 F.3d at 1323. Defendant's motion for summary judgment on plaintiff's retaliation claim is overruled.

## 2. Failure to Accommodate Claim

To determine the validity of a claim under the Rehabilitation Act, courts now follow the standards provided for claims under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.,* and the regulations issued by the Equal Employment Opportunity Commission to implement that Act. *See* 29 U.S.C. § 793(d); 29 C.F.R. Part 1630; *Gonzagowski v. Widnall* 115 F.3d 744, 747 (10th Cir.1997). Accordingly the Court applies the *McDonnell Douglas* burden shifting analysis to plaintiff's claim under the Rehabilitation Act. In order to establish a prima facie case of discrimination under the Act plaintiff must demonstrate (1) that he is a handicapped person within the meaning of the Act; (2) that he is otherwise qualified for the job; and (3) that defendant discriminated against him because of the handicap. *Woodman v. Runyon,* 132 F.3d 1330, 1338 (10th Cir.1997). Defendant argues that plaintiff cannot meet his prima facie burden because he cannot establish that he is a handicapped person within the meaning of the Act or that he was otherwise qualified for the tug job.

Under the Rehabilitation Act, a handicap (or disability) is defined as one that substantially limits one or more major life activities. 29 U.S.C. § 706(8)(B). Major life activities include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking breathing, learning, and working. *See* 29 C.F.R. § 1630.2(i). An impairment constitutes a disability only if it "substantially limits" a major life activity. An impairment is substantially limiting if it significantly restricts the "condition, manner or duration under which an individual can perform a particular major life activity as compared to ... the average person in the general population." 29 C.F.R. § 1630.2(j)(*l* )(ii). Three factors must be considered in determining whether a substantial limitation is present: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the expected permanent or long term impact. *Bolton v. Scrivner Inc.,* 36 F.3d 939, 943 (10th

Cir.1994) *cert. denied,* 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995) *citing* 29 C.F.R. § 1630.2(j)(2).

To demonstrate a substantial limitation in his ability to work, plaintiff must show "significant restriction in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). The inability to perform a single, particular job is insufficient. *Id.; Bolton,* 36 F.3d at 942. In addition to the three factors already mentioned (nature and severity, duration, long-term impact), three other factors may be considered when determining whether a plaintiff demonstrates a substantial limitation in the major life activity of working: (1) the geographic area to which plaintiff has reasonable access; (2) the job from which plaintiff has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographic area, from which the individual is also disqualified because of the impairment (class of jobs); and/or (3) the job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographic area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes). *Bolton* 36 F.3d at 943; 29 C.F.R. § 1630.2(j)(3)(ii).

Defendant does not move for summary judgment based on plaintiff's known physical limitations under this analysis and accordingly the Court cannot find for defendant on this element. On this record, the Court cannot determine whether plaintiff's degenerative disc condition and permanent lifting restriction substantially limited his ability to lift or work, major life activities. *See Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170, 1174 (10th Cir.1996) (lifting is major life activity; evidence created genuine issue of material fact whether plaintiff's impairment substantially limited ability to lift); *Colwell v. Suffolk County Police Dept.,* 967 F.Supp. 1419, 1425–26 (E.D.N.Y.1997) (evidence that plaintiffs suffered from chronic back conditions

supported jury finding of disability); *but see Kirkendall v. United Parcel Serv., Inc.*, 964 F.Supp. 106, 111 (W.D.N.Y.1997) (inability to lift items in excess of 30 pounds, to sit for periods longer than three hours at a time, and to engage in certain leisure activities did not substantially limit plaintiff in any major life activity); *Coker v. Tampa Port Authority*, 962 F.Supp. 1462, 1476–68 (M.D.Fla.1997) (inability to play sports and lifting restrictions do not constitute substantial limitation on a major life activity).

■ Nor is the Court persuaded that defendant is entitled to judgment on this element simply because plaintiff failed to sign his bid card. According to defendant this is "one reason" it did not consider plaintiff for the tug position. While this may be a legitimate reason for refusing to consider plaintiff for the position, it does not establish as a matter of law that defendant acted for a nondiscriminatory reason. *See e.g., Bradley v. Americold Servs., Inc.*, 1997 WL 613335 at *4 (D.Kan. Sept. 8, 1997) (factual question whether invidious discrimination also motivated employer's decision).

■ Defendant also argues that plaintiff was not otherwise qualified for the tug position. Plaintiff bears the ultimate burden of proving that he is "qualified" within the meaning of the Rehabilitation Act, *i.e.*, that the tug job was open and that he could have performed the job with or without reasonable accommodation. *See Woodman*, 132 F.3d at 1344. With respect to the reasonableness of any accommodation, however, it is enough for plaintiff "'to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.'" *Id.* (citing *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir.1995).)

The Court finds that material questions of fact preclude summary judgment on the issue whether plaintiff was qualified for the tug job. Plaintiff claims that he was medically qualified for the position (without any accommodation), and it is undisputed that the position was open and that plaintiff was the senior bidder.

In support of its motion, defendant relies on the portion of the first tug job description which requires "an ability to handle weights and loads, beyond normal functions of a posi-

tion." According to defendant, plaintiff's failure to participate in a functional capacity examination made it impossible for it to determine whether plaintiff could fulfill this job requirement. The Court is not persuaded. Defendant has presented two job descriptions for the tug job, yet it does not indicate which of the two is the relevant job description. Moreover, the Court finds that the requirement which defendant relies upon is vague and ambiguous as it does not specify what constitutes "normal functions of a position." On this record, the Court cannot hold as a matter of law that plaintiff could not perform the enumerated duties of the tug position, with or without reasonable accommodation.

**IT IS THEREFORE ORDERED** that *Defendant's Motion For Summary Judgment* (Doc. # 27) filed March 13, 1998, should be and hereby is overruled.